**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ELAINE WANG,<br><br>Plaintiff,<br><br>v.<br><br>GLOBAL BLOOD THERAPEUTICS, INC., TED W. LOVE, M.D., SCOTT MORRISON, DEVAL L. PATRICK, MARK L. PERRY, GLENN PIERCE, M.D., PH.D., PHILIP PIZZO, M.D., DAWN SVORONOS, ALEXIS A. THOMPSON, M.D., and WENDY YARNO,<br><br>Defendants. | : | Civil Action No. 22-cv-7157<br><br>**COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMANDED** |

Elaine Wang ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Global Blood Therapeutics, Inc. ("Global Blood or the "Company") and the members Global Blood's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of Global Blood by affiliates of Pfizer Inc. ("Pfizer").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on August 19, 2022 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Ribeye Acquisition Corp. ("Merger Sub"), a wholly-owned subsidiary of Pfizer, will merge with and into Global Blood with Global Blood surviving as a wholly-owned subsidiary of Pfizer (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on August 7, 2022 (the "Merger Agreement"), each Global Blood stockholder will receive $68.50 in cash (the "Merger Consideration") for each Global Blood share owned.

3. As discussed below, Defendants have asked Global Blood's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisors, J.P. Morgan Securities LLC ("J.P. Morgan") and Centerview Partners LLC ("Centerview") in support of their fairness opinions.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Global Blood's stockholders or, in the event

the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the Company's proxy solicitor, Innisfree M&A Incorporated, is headquartered in this District, and the closing of the Proposed Transaction will take place in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Global Blood stocks and has held such stocks since prior to the wrongs complained of herein.

10. Individual Defendant Ted W. Love has served as a member of the Board since September 2013 and is the President and Chief Executive Officer.

11. Individual Defendant Scott Morrison has served as a member of the Board since January 2016.

12. Individual Defendant Deval L. Patrick has served as a member of the Board since May 2020.

13. Individual Defendant Mark L. Perry has served as a member of the Board since April 2015.

14. Individual Defendant Glenn Pierce, M.D., Ph.D. has served as a member of the Board since February 2016.

15. Individual Defendant Philip Pizzo, M.D. has served as a member of the Board since September 2015.

16. Individual Defendant Dawn Svoronos has served as a member of the Board since December 2018.

17. Individual Defendant Alexis A. Thompson, M.D., M.P.H. has served as a member of the Board since March 2021.

18. Individual Defendant Wendy Yarno has served as a member of the Board since December 2017.

19. Defendant Global Blood is a Delaware corporation and maintains its principal offices at 181 Oyster Point Boulevard, South San Francisco, CA 94080. The Company's stock trades on the NASDAQ Global Select under the symbol "GBT."

20. The defendants identified in paragraphs 10-18 are collectively referred to as the "Individual Defendants" or the "Board."

21. The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. <u>The Proposed Transaction</u>

22. Global Blood, a biopharmaceutical company, engages in the discovery, development, and delivery of treatments for underserved patient communities with sickle cell disease (SCD). The Company offers Oxbryta tablets, an oral, once-daily therapy for SCD. It also

evaluates the safety and pharmacokinetics of single and multiple doses of Oxbryta in a Phase II a clinical trial of adolescent and pediatric patients with SCD. In addition, the Company is developing its lead product candidate inclacumab, novel human monoclonal antibody, which is in Phase III a clinical trial to reduce the incidence of painful vaso-occlusive crises, and resulting hospital admissions; and GBT601, a hemoglobin polymerization inhibitor that is in Phase I development. It has a license and collaboration agreement with Syros Pharmaceuticals, Inc. to discover, develop, and commercialize therapies for SCD and beta thalassemia; and Sanofi S.A. to two early-stage research programs in SCD. Global Blood was incorporated in 2011 and is headquartered in South San Francisco, California.

23. On August 8, 2022, the Company and Pfizer jointly announced the Proposed Transaction:

> NEW YORK & SOUTH SAN FRANCISCO, Calif.--(BUSINESS WIRE)-- Pfizer Inc. (NYSE: PFE) and Global Blood Therapeutics, Inc. (GBT) (NASDAQ: GBT) today announced the companies have entered into a definitive agreement under which Pfizer will acquire GBT, a biopharmaceutical company dedicated to the discovery, development and delivery of life-changing treatments that provide hope to underserved patient communities, starting with sickle cell disease (SCD). The acquisition complements and further enhances Pfizer's more than 30-year heritage in rare hematology and reinforces the company's commitment to SCD by bringing expertise and a leading portfolio and pipeline with the potential to address the full spectrum of critical needs in this underserved community. Pfizer intends to continue to build on the companies' shared commitment to and engagement with the SCD community.
>
> Under the terms of the transaction, Pfizer will acquire all the outstanding shares of GBT for $68.50 per share in cash, for a total enterprise value of approximately $5.4 billion, including debt and net of cash acquired. The Boards of Directors of both companies have unanimously approved the transaction.
>
> SCD is a lifelong, devastating inherited blood disorder impacting millions of people worldwide, predominantly in populations of African, Middle Eastern and South Asian descent. GBT developed

Oxbryta® (voxelotor) tablets, a first-in-class medicine that directly targets the root cause of SCD. Oxbryta was approved in the United States in November 2019 and is also approved in the European Union, United Arab Emirates, Oman and Great Britain. Net sales for Oxbryta were approximately $195 million in 2021. Leveraging its global platform, Pfizer plans to accelerate distribution of GBT's innovative treatment to parts of the world most impacted by SCD.

In addition, GBT is developing GBT021601 (GBT601), an oral, once-daily, next-generation sickle hemoglobin (HbS) polymerization inhibitor in the Phase 2 portion of a Phase 2/3 clinical study. GBT601 has the potential to be a best-in-class agent targeting improvement in both hemolysis and frequency of vaso-occlusive crisis (VOC). GBT's promising pipeline also includes inclacumab, a fully human monoclonal antibody targeting P-selectin which is being evaluated in two Phase 3 clinical trials as a potential quarterly treatment to reduce the frequency of VOCs and to reduce hospital readmission rates due to VOCs. Both GBT601 and inclacumab have received Orphan Drug and Rare Pediatric Disease designations from the U.S. Food and Drug Administration (FDA). If approved, GBT's pipeline and Oxbryta have the potential for an SCD franchise that could achieve combined worldwide peak sales of more than $3 billion.

"Sickle cell disease is the most common inherited blood disorder, and it disproportionately affects people of African descent. We are excited to welcome GBT colleagues into Pfizer and to work together to transform the lives of patients, as we have long sought to address the needs of this underserved community," said Albert Bourla, Chairman and Chief Executive Officer, Pfizer. "The deep market knowledge and scientific and clinical capabilities we have built over three decades in rare hematology will enable us to accelerate innovation for the sickle cell disease community and bring these treatments to patients as quickly as possible."

"Today is an exciting milestone that accelerates GBT's mission to discover, develop and deliver life-changing treatments that provide hope to underserved patient communities," said Ted W. Love, M.D., President and Chief Executive Officer, GBT. "Pfizer will broaden and amplify our impact for patients and further propel much-needed innovation and resources for the care of people with sickle cell disease and other rare diseases, including populations in limited-resource countries. We look forward to working together with Pfizer to serve our communities and advance our shared goal of improving health equity and expanding access to life-changing treatments to create a healthier future for all."

> Pfizer expects to finance the transaction with existing cash on hand. The proposed transaction is subject to customary closing conditions, including receipt of regulatory approvals and approval by GBT's stockholders.
>
> Due to the proposed transaction, GBT will not hold its previously scheduled conference call to discuss its second quarter 2022 financial results. The company will file its quarterly report on Form 10-Q for the quarter ending June 30, 2022 with the U.S. Securities and Exchange Commission announcing those results on August 8, 2022.
>
> Pfizer's financial advisors for the transaction are Morgan Stanley & Co. LLC and Goldman Sachs & Co. LLC, with Wachtell, Lipton, Rosen & Katz acting as its legal advisor. GBT's financial advisors for the transaction are J.P. Morgan Securities LLC and Centerview Partners LLC, with Cravath, Swaine & Moore LLP and Goodwin Procter LLP acting as legal advisors.

* * *

24. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Global Blood's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B. <u>The Materially Incomplete and Misleading Proxy Statement</u>**

25. On August 19, 2022, Global Blood filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed

decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

26. The Proxy Statement fails to provide material information concerning financial projections by Global Blood management and relied upon by the financial advisors in their analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Global Blood management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

27. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: EBIT, Unlevered Free Cash Flow – Incl. NOLs and Equity Raise, and Unlevered Free Cash Flow – Excl. NOLs and Equity Raise, but fails to provide line items used to calculate the metrics ***and/or*** a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

28. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

29. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

30. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

31. The Projections also disclose Risk-Adjusted Revenue "to take into account certain downward adjustments relating to, among other things, development and business momentum,

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

trends and forecasts, including developments relating to coverage, reimbursement and payor rules and policies applicable to, and pricing of, Oxbryta." Proxy Statement at 54. However, the Proxy Statement fails to disclose what how those adjustments were quantified, and what the non-risk-adjusted revenues are.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

32. With respect to J.P. Morgan's *Public Trading Multiples* analysis, the Proxy Statement fails to disclose the financial metrics and multiples for each company selected for the analysis.

33. With respect to J.P. Morgan's *Selected Transaction Analysis*, the Proxy Statement fails to disclose the financial metrics and multiples for each transaction selected for the analysis.

34. With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the range of terminal values for Global Blood; (iii) the inputs and assumptions underlying the use of perpetuity growth rates of (50.0%) to (30.0%) for Oxbryta, GBT601 and inclacumab, 5.0% for research assets and 2.0% for corporate overhead and other unallocated expenses; (iv) the inputs and assumptions underlying the use of the range of discount rates of 10.5% to 13.5%; (v) the Company's weighted average cost of capital; and (vi) the number of fully diluted shares of Company common stock outstanding.

35. With respect to Centerview's *Selected Public Company Analysis*, the Proxy Statement fails to disclose the financial metrics and multiples for each company selected for the analysis.

36. With respect to Centerview's *Selected Precedent Transaction Analysis*, the Proxy Statement fails to disclose the financial metrics and multiples for each transaction selected for the analysis.

37. With respect to Centerview's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the implied terminal value for Global Blood; (iii) the perpetuity growth rates used and the inputs and assumptions underlying the rates; (iv) the inputs and assumptions underlying the use of the range of discount rates of 10.5% to 12.5%; (v) the Company's weighted average cost of capital; and (vi) the number of fully diluted shares of Company common stock outstanding.

38. With respect to Centerview's *Analyst Price Targets Analysis*, the Proxy Statement fails to disclose the price targets for Company stock and the Wall Street research analysts observed.

39. With respect to Centerview's *Precedent Premiums Paid Analysis*, the Proxy Statement fails to disclose the transactions observed and the premiums paid in those transactions.

40. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

### On Behalf of Plaintiff Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100

41. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement

which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

43. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

44. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

45. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

46. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

47. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

48. The Individual Defendants acted as controlling persons of Global Blood within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Global Blood, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Global Blood, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

49. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

50. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Global Blood, and, therefore, is presumed to have had

the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

51. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

52. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

53. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

54. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: August 22, 2022

**MELWANI & CHAN LLP**

By: */s/ Gloria Kui Melwani*

Gloria Kui Melwani
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*